ULLMANN v. UNITED STATES.

(Circuit Court, S. D. New York. January 21, 1910.)

No. 5,559.

**1.** CUSTOMS DUTIES (§ 66*)—SECRETARY OF THE TREASURY—INVALID DEPARTMENTAL REGULATION.

There is no statute granting to the Secretary of the Treasury the power to adopt article 1450, Customs Regulations 1899, permitting entry of imports by appraisement without invoice, where the invoice value greatly exceeds the general market value at the time of exportation.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 66.*]

**2.** CUSTOMS DUTIES (§ 75*)—DUTIABLE VALUE—EXCESSIVE INVOICE VALUE.

The provisions in Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139 (U. S. Comp. St. 1901, p. 1924), and Act June 10, 1890, c. 407, § 7, 26 Stat. 134, as amended by Act July 24, 1897, c. 11, § 32, 30 Stat. 211 (U. S. Comp. St. 1901, p. 1892), that "duty shall not * * * be assessed * * * upon less than the invoice * * * value," and that "duty shall be assessed upon the actual market value * * * at the time of exportation," when construed together, mean that the dutiable value shall in no case be fixed at less than the purchase price of the goods; and where, subsequently to the purchase of goods for import to the United States, the market value of such goods decreases, the goods are nevertheless dutiable on the basis of the price paid.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 181; Dec. Dig. § 75.*]

On Application for Review of a Decision by the Board of United States General Appraisers.

The Board of General Appraisers affirmed the assessment of duty by the collector of customs at the port of New York on merchandise imported by Joseph Ullmann. The Board's opinion (G. A. 6,918, T. D. 29,883) reads as follows:

HAY, General Appraiser. Certain sealskins were purchased by the protestant in the years 1904–1906, imported by him in 1907, and entered for duty at the price paid for them in the several years before mentioned. It is admitted that the price of like sealskins in the year 1907, when these were imported, was less than the price paid for the same in 1904–1906. The importer made application to the Secretary of the Treasury, under the provisions of article 1450 of the customs regulations of 1899, for permission to enter the merchandise by appraisement. This was denied. The appraiser returned the invoice value as correct, and the collector assessed the merchandise for duty on the value as stated in the invoices.

The protestant assigns this action as error, and three contentions are made by him in presenting his case: (1) That he should have been permitted to enter the merchandise by appraisement; (2) that the act of the appraiser was invalid, he having made no such appraisement of the merchandise as the law directs him to make; (3) that, the merchandise being subject to an ad valorem rate, duty should, under the provisions of Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139 (U. S. Comp. St. 1901, p. 1924), have been assessed on its actual market value or wholesale price at the time of exportation to the United States, which was the year 1907.

The first question is easily disposed of. Without considering the question of the Secretary's authority to make such a regulation, the very language of article 1450 is such that the right to enter by appraisement without an invoice is entirely dependent upon the approval of the Secretary of the Treasury in each case, and in the case before us the Secretary of the Treasury refused his approval.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The second ground—that the appraisement was invalid—cannot avail the protestant in event the language of section 7, 26 Stat. 134 (U. S. Comp. St. 1901, p. 1892), under which the collector acted, is held to modify and control all other provisions of the law with reference to the assessment of duty upon imported merchandise.

Coming, then, to the third ground, the substance of the importer's contention is that the concluding sentence of section 7—"Duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value"— does not modify the provision of section 19 that "duty shall be assessed upon the actual market value or wholesale price of such merchandise * * * at the time of exportation to the United States"; that section 19, occupying a place subsequent in the act to section 7, is the later expression of the legislative will, and hence controlling; that, there being a conflict between the two provisions, the doubt that arises therefrom should be solved in favor of the importer.

It is a well-settled rule of construction that the last of two repugnant provisions of the same act shall prevail. Powers v. Barney, 5 Blatchf. 202, 19 Fed. Cas. 1234 (No. 11,361). Founded, as it is, upon the necessity for some rule by which repugnant provisions of the same act may be construed, rather than upon any sound principle, this rule is not without exceptions. One of these exceptions is where an examination of the repugnant provisions and the entire body of legislation on the subject, and also the previous history of legislation touching the same subject-matter, reveals the fact that the intention of the lawmaking body was that the earlier provision should modify and control the later. Kansas Pacific Ry. Co. v. Yanz, 16 Kan. 583. Tested by this exception, we find that the provision of section 7 above quoted was intended by Congress to be the dominant and controlling thought in establishing the value in the assessment of duty upon imported merchandise.

Examining these provisions historically, we find that the provision in section 7 existed in some form before our law made any provision requiring in all cases the appraisement of merchandise at its foreign market value at the time of purchase. It has been carried through all the laws on the subject since April 20, 1818, and in many of the old statutes there is added to this provision "any law of Congress to the contrary notwithstanding." While not in identical language, both the provision in section 7 and that in section 19 were part of the law at the time of the passage of the act of 1890, and the provision now contained in section 7 had theretofore been construed for many years, not only by the courts, but in the practical administration of the law, as controlling and modifying the provision now contained in section 19, as well as all other provisions of the law relative to the value upon which duty should be assessed upon imported merchandise. Congress is presumed by the law to be familiar with these facts, and in the absence of express language could not be held to have intended to change the practice. In addition to these considerations, which we believe to be controlling, the rule of stare decisis applies with unusual force, for both before and since the customs administrative act of 1890 it has been uniformly held that the concluding provision of section 7 is controlling, and that it is the duty of the liquidating officer to assess duty upon an amount not less than the invoice and entered value. Downing's Case, G. A. 6,732, T. D. 28,814; Isler & Guye's Case, G. A. 6,234, T. D. 26,920; Kimball v. Collector, 10 Wall. 436, 19 L. Ed. 964; Daloz v. U. S. (C. C.) 171 Fed. 275, T. D. 29,807.

The protests are overruled.

Kammerlohr & Duffy (John G. Duffy, of counsel), for importer.

D. Frank Lloyd, Deputy Asst. Atty. Gen. (Thomas M. Lane, of counsel), for the United States.

MARTIN, District Judge. The importation consisted of sealskins purchased in London in the years 1904, 1905, and 1906, and imported in April, July, and September of 1907. There was a substantial reduction in the market value of the merchandise in question between

the time of purchase and the time of importation. Assessment was made on the purchase price. The importer filed protest, claiming that duty should have been assessed upon the fair market value at the time of importation, under the provisions of section 19, customs administrative act of 1890 (U. S. Comp. St. 1901, p. 1924), as amended in 1897, and by virtue of article 1450 of the Customs Regulations of 1899, which provides:

In cases where it has been conclusively shown that the invoice value of an importation was far beyond the general market value of similar goods at the time of exportation, entry by appraisement without invoice may be allowed, with the approval of the Secretary of the Treasury in each case.

The Board of Appraisers sustained the collector, and the case comes into court upon appeal by the importer.

There is no statute granting to the Treasury Department the power to adopt such an article as above set forth. It evidently came into existence to meet specific cases of fraud practiced upon purchasers by vendors. Section 19 of the act aforesaid, read in connection with section 7, means this: That whenever imported merchandise is subject to an ad valorem duty, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in wholesale quantities at the time of exportation to the United States in the principal markets of the country from whence imported, which shall in no case be fixed at an amount less than the purchase price thereof in said market.

It is claimed by the importer that, as section 19 follows section 7, it should be construed as in conflict with the provisions of section 7 and a modification thereof. I do not concur in that view, as the sections construed as above set forth are not in conflict. For further discussion of the questions involved in this appeal I refer to the well-considered opinion of the Board of General Appraisers by Judge Hay.

The decision of the Board is affirmed.